UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| OZWELL LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-02598-JRS-MJD |
| | ) | |
| WEST BEND INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

Before the Court is Plaintiff's Motion for Leave to File their First Amended Complaint. [Dkt. 43.] Specifically, Plaintiff requests that the Court (1) revise its Order at Docket 40 from a dismissal with prejudice to dismissal without prejudice; and (2) grant Plaintiff leave under Federal Rule of Civil Procedure 15(a)(2) to file their First Amended Complaint. *Id.* at 6. Defendant opposes Plaintiff's requests. [Dkt. 46.] For the reasons explained below, Plaintiff's motion is **DENIED**.

## I. Background

This is an insurance coverage dispute over tornado damage to Plaintiff's commercial property—specifically, a "propriety retractable aluminum-and-polycarbonate enclosure known as the DynaDome." [Dkt. 43-1, ¶ 2.] "The dispute concerns the amount and scope of covered damage, including whether the DynaDome could safely and practically be repaired or instead required replacement[.]" *Id.* Plaintiff asserted that the DynaDome needed to be fully replaced; Defendant took the opposite position. That dispute and related actions by the parties led to Defendant partially denying Plaintiff's insurance claim. In this lawsuit, Plaintiff claims that Defendant breached the terms of their insurance contract and that its partial denial was in bad

faith. Defendant moved for judgment on the pleadings on Plaintiff's bad faith claim; the Court granted the motion and dismissed the claim with prejudice. Now, Plaintiff seeks to reassert its bad faith claim by amending its complaint.

**A. The events that bring the Parties before the Court**

Plaintiff owns a fitness facility in Carmel, Indiana. [Dkt. 43-1, ¶ 1.] That facility is covered by a commercial insurance policy through Defendant. *Id.*, ¶ 8. Attached to the fitness facility is a DynaDome–a "proprietary, custom-engineered retractable aluminum and polycarbonate enclosure with motorized fames, slip-fit connection brackets, and a track-based movement system." [Dkt. 25 at 3–4.] On April 2, 2025, a tornado struck Plaintiff's fitness facility, damaging the facility and the DynaDome. [Dkt. 43-1, ¶ 12.]

Plaintiff submitted a claim to Defendant for the tornado damage. [Dkt. 1-2, ¶ 12.] Defendant then sent engineers to inspect the damage on April 15 and May 22.[1] [Dkt. 19-5 at 2–3.] On April 24, the Vice President of Sales for DynaDome sent a letter to Plaintiff stating that, based on his April 6 inspection of the facility, the DynaDome had suffered "catastrophic and irreparable damage such that the structure needs to be fully replaced." [Dkt. 19-2.] On May 30, Defendant provided Plaintiff with the report of its engineers, which found that the DynaDome could be repaired and did not need to be fully replaced. [Dkt. 19-3.] Then, on June 4, Plaintiff emailed the claim specialist handling its claim to alert them that, "[i]n the interest of mitigating further business interruption and in accordance with the policy," Plaintiff would be proceeding with dome replacement on June 9. [Dkt. 19-4 at 5.] The claim specialist responded two days later, warning Plaintiff not to proceed with the demolition as the parties had not yet reached an agreed settlement of Plaintiff's claim and had "a fundamental difference in scope and cost of

[1] All dates are in 2025 unless stated otherwise.

repairs" to the fitness facility that had not yet been resolved. [Dkt. 19-4 at 3, 7.] The claim specialist also reminded Plaintiff of its duty under the insurance policy to "permit [Defendant] to take samples of damaged and undamaged property for inspection, testing and analysis[.]" *Id.* at 3. The claim specialist closed his response by alerting Plaintiff that he would be unavailable from approximately June 9 to June 16. *Id.*

On June 10, Plaintiff sent the claim specialist a letter to serve as Plaintiff's "formal update and position statement regarding the tornado-related claim" for the fitness facility. [Dkt. 19-5 at 2.] Plaintiff asserted that Defendant's "lack of clarity or action" constituted an unfounded delay that materially interfered with its business and gave notice that the DynaDome would be dismantled on June 17 using a destructive inspection process. *Id.* at 4. The letter required the claim specialist to respond by June 14 regarding Defendant's attendance at the dismantling and stated that "[d]ue to the nature and cost of this inspection, the date is fixed and will not be rescheduled." *Id.* The letter concluded by stating: "If no response is received by June 14, I will proceed with dismantling and all necessary repairs." *Id.* at 5. The claim specialist responded when he returned to work on June 16, reiterating that Defendant stood "by its position on current scope and cost of repairs." [Dkt. 19-4 at 2.] On June 17, Plaintiff began dismantling the DynaDome. [Dkt. 43-1, ¶ 34.] Plaintiff did not preserve any of the dismantled components for Defendant to inspect and test. [Dkt. 43-1, ¶ 42.]

On July 1, Defendant sent Plaintiff a reservation of rights letter, alerting it that by "proceeding with the demolition of the dome without awaiting a response from West Bend, you have breached your duties in the event of loss or damage[.]" [Dkt. 19-6 at 4.] Despite the alleged breach of policy conditions, Defendant maintained it would still continue its investigation of Plaintiff's claim while reserving "the right to deny [Plaintiff's] claim as a result

of [Plaintiff's] breach of [its] duties under the policy and for failing to establish the necessity of demolishing and replacing the dome and its components." *Id.* at 6. Also on July 1, the Engineer of Record for Plaintiff's DynaDome project commissioned a structural assessment report that "strongly recommend[ed] replacement of all affected columns, beams, and slip-fit connection brackets" due to "a risk to structural performance and safety." [Dkt. 19-7 at 3.] That report was received by Defendant sometime in early July, to which Defendant's engineers responded in late July with follow-up questions for the Engineer of Record regarding his assessment. [Dkt. 43-1, ¶¶ 40–41.]

On August 6, Defendant sent Plaintiff a letter partially denying its claim. [Dkt. 19-8.] The letter asserted Defendant breached its duties under the insurance policy by "destroy[ing] and/or dispos[ing] of the purportedly damaged components of the [DynaDome] without providing [Defendant] an opportunity to propose a protocol for the dismantling of the components or to inspect each component during and after its dismantling." *Id.* at 9. Defendant considered itself prejudiced by this breach of duty, and "therefore denie[d] any further liability to [Plaintiff] for the claimed loss to the [fitness facility]" past the estimated replacement cost value based on Defendant's engineers report. *Id.*

**B. The Court's prior dismissal of Plaintiff's bad faith claim**

In response to the events above, Plaintiff filed suit against Defendant in state court, alleging that Defendant breached the insurance contract and denied its claim in bad faith. [Dkt. 1-2.] Defendant removed the suit to this Court, answered Plaintiff's Complaint, and moved for judgment on the pleadings on Plaintiff's bad faith claim. [Dkt. 20.] The Court granted Defendant's motion and dismissed Plaintiff's bad faith claim with prejudice, finding that Plaintiff failed to plead sufficient facts to establish bad faith. [Dkt. 42 at 1, 5.] Specifically, the Court

found that Plaintiff's Complaint lacked sufficient factual details concerning the alleged bias of Defendant's experts; used conclusory statements rather than factual allegations when stating its bad faith claim; and, ultimately, "only alleg[ed] that the Parties had a good faith dispute over coverage." *Id.* at 7–9. The Court also found that there were no factual allegations illustrating that Defendant "plausibly acted with any malice or dishonest purpose" in its dispute with Plaintiff, and that Defendant's partial denial of coverage, even if it was in error, "came from [Defendant's] rational determination that the DynaDome could have been repaired rather than replaced and that [Plaintiff] breached its contract by beginning demolition against [Defendant]'s advice." *Id.* at 9.

## II. Legal Standard

Plaintiff seeks to reinstate its bad faith claim. [Dkt. 43, ¶ 15 ("The proposed amended complaint substantially expands the factual allegations supporting Plaintiff's bad faith claim.").] To rule on Plaintiff's motion, the Court must first determine whether its previous Order dismissing Plaintiff's bad faith claim with prejudice should be modified to dismissal without prejudice. If the Court determines such modification is warranted, then it must decide whether Plaintiff should be given leave to amend its complaint to reassert its bad faith claim. Therefore, the Court will review Plaintiff's motion using the standards applicable to motions for reconsideration and motions for leave to amend.

Interlocutory orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Reconsidering an order under Rule 54(b) serves "a limited function; to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (cleaned up). Such action is appropriate "where the Court has

misunderstood a party, where the Court has made a decision outside the adversarial issues presented to the Court by the parties, where the Court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered." *Lockhart v. ExamOne World Wide, Inc.*, 904 F.Supp.2d 928, 951 (S.D. Ind. 2012) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Whether to revise an interlocutory order is within the Court's discretion. *Id.* at 1270.

Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). This is a liberal standard, and "[t]he Supreme Court has interpreted this rule to require a district court to allow amendment unless there is a good reason—futility, undue delay, undue prejudice, or bad faith—for denying leave to amend." *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357–58 (7th Cir. 2015) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III. Discussion

### A. Reconsideration

Plaintiff moves the Court to reconsider its dismissal of its bad faith claim with prejudice based on newly discovered evidence. A movant relying upon newly discovered evidence as the basis for reconsideration must show that the evidence (1) was unknown to it until after the ruling and (2) could not have been discovered and produced using reasonable diligence during the pendency of the underlying motion. *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.* 90 F.3d 1264, 1269–70 (7th Cir. 1996).

Plaintiff's newly discovered evidence includes approximately 1,600 pages from Defendant's claim files and other related materials. [Dkt. 43, ¶ 3.] Plaintiff received those documents in discovery after Defendant's motion for judgment on the pleadings was fully briefed but still pending before the Court. *Id.*, ¶ 3. Plaintiff asserts that "this new evidence represents a

significant change in fact supporting a revision of the Court's Order solely to allow consideration of an amended pleading." *Id.*, ¶ 8. But Plaintiff has not attached any of these newly discovered documents with its motion. According to Defendant, that failure is fatal because "[m]otions for reconsideration based on newly discovered evidence require actual presentation of the newly discovered evidence so that the Court can determine whether the evidence supports reconsideration." [Dkt. 46 at 5.] According to Plaintiff, that failure is not fatal because it "is not asking the Court to adjudicate the merits of its bad faith based upon [the newly discovered] documents" but rather seeks "permission to plead facts learned from them." [Dkt. 47 at 2.]

Defendant supports its argument by citing *Love v. Pence*, 47 F.Supp.3d 805, 807 (S.D. Ind. 2014), wherein this Court granted a motion to reconsider "based on newly discovered evidence in the form of two memoranda which the movant presented to the Court for consideration." [Dkt. 46 at 5.] Plaintiff counters by arguing that "[n]othing in *Love v. Pence* . . . establishes a categorical rule requiring a plaintiff seeking leave to amend an interlocutory dismissal to prove its amended allegations with exhibits before the amended complaint may even be filed." [Dkt. 47 at 3.] While Plaintiff is correct that *Love* establishes no such categorical rule, Plaintiff misses the point. Plaintiff is not seeking leave to amend an interlocutory dismissal; it is asking the Court to reconsider its prior Order. In asking the Court to reconsider its prior Order, Plaintiff must do more than represent that it has found newly discovered evidence; it must show that its evidence is truly "newly discovered" and presents new significant facts. And Plaintiff has not made this showing.

Though an insurer's claims files are likely to be the sole or primary source of evidence on whether they acted in good faith, *see Pers. Staffing Grp., LLC v. Protective Ins. Co.*, 2022 U.S. Dist. LEXIS 218281, at *6–7 (S.D. Ind. Dec. 5, 2022), Plaintiff fails to show how that is the case

here. For example, Plaintiff states that the following new facts come from Defendant's newly discovered claim file:

1. Defendant knew "its proposed two-week repair was not supported by any contractor agreeing to perform the proprietary repair, evidence that necessary proprietary components were available, or an engineer willing to certify the repaired structure;"
2. Defendant knew "the Engineer of Record had personally inspected the dismantled structural components, observed permanent structural deformation and compromised connections, and recommended replacement for structural safety;"
3. "[Defendant] had repeatedly inspected and documented the assembled DynaDome before dismantling;"
4. "[Defendant] received advance written notice of the dismantling and an opportunity to attend but did not arrange for its engineer or another representative to do so; and"
5. "despite possessing those facts, [Defendant]'s partial-denial letter presented the feasibility of a rapid repair and its claimed deprivation of an inspection opportunity in materially different terms."

[Dkt. 47 at 4–5.] But Facts Nos. 2, 3, and 4 were already in the record when the Court ruled on Defendant's motion for judgment on the pleadings. *See* [Dkt. 19-7 at 2–5 (Fact #2); Dkts. 19-3 at 5, 19-5 at 2, 25 at 3 (Fact #3); Dkts. 19-4 at 5, 19-5 (Fact #4)]. And the Court fails to see how Fact No. 1 moves the needle towards dismissal without prejudice. Plaintiff's bad faith claim concerns Defendant's partial denial of coverage. Defendant's partial denial of coverage was based on its engineering report commissioned before the DynaDome was dismantled and Plaintiff's breach of its policy conditions, namely breach of its duty to "set the damaged property aside and in the best possible order for examination. [Dkt. 19-8 at 9.] Even if Defendant knew its two-week repair estimate was not supported in the ways identified by Plaintiff, that fact would not adequately support a bad faith claim in this case. The same is true for Fact No. 5. Therefore, there is no "newly discovered" evidence presenting significant new facts for the Court to

consider against its prior Order dismissing Plaintiff's bad faith claim. On that basis, the Court **DENIES** Plaintiff's motion.

**B. Leave to Amend**

However, even if Plaintiff's "newly discovered" evidence presented significant new facts that require the Court to revise its Order dismissing Plaintiff's bad faith claim with prejudice, the Court would still deny Plaintiff's motion because its proposed amendment is futile.

"The opportunity to amend a complaint is futile if the complaint, as amended, would fail to state a claim upon which relief could be granted." *General Elec. Capital Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997); *see also Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Nw. Indiana*, 786 F.3d 510, 524 (7th Cir. 2015) (explaining that the standard of review for denials of leave to amend based on futility is "the legal sufficiency standard of Rule 12(b)(6)"). Moreover, "a motion to amend or supplement the complaint . . . requires more to compel acceptance than the fact that the pleading sought to be added states a claim." *Glatt v. Chicago Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996). Indeed, "the court is entitled to demand reasons for thinking that the denial of the motion would work a serious injustice," including the new claim's probable merit. *Id.*

Under Indiana law, proving a bad faith claim requires showing a breach of the duty of good faith and "evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005) (cleaned up). The Indiana Supreme Court has determined that the scope of an insurer's duty of good faith includes refraining from "(1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Id.* at 976 (quoting

*Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 519 (Ind. 1993)); *see also id.* (declining to "expand on the extent of the duty an insurer owes its injured beyond those we have already expressed in *Hickman*"); *Penske Truck Leasing Co, L.P. v. Westfield Ins. Co.*, 2021 WL 5359598, at *6 (S.D. Ind. Nov. 16, 2021) (explaining that *Magwerks Corp.* teaches that *Erie Ins. Co.* sets forth "a closed set of four ways in which an insurer can tortiously breach its duty of good faith and fair dealing").

Plaintiff argues that their proposed amendment is not futile because it alleges a plausible claim for bad faith coverage denial. [Dkt. 43, ¶ 15.] Whereas Plaintiff's original Complaint relied on "conclusory statements" to plead its bad faith claim, Plaintiff's proposed Amended Complaint adds factual allegations concerning Defendant's knowledge and conduct before it issued the partial denial of coverage letter. [Dkt. 47 at 6.] But Plaintiff's new factual allegations still do not plausibly state a claim of bad faith coverage denial.

The Court dismissed Plaintiff's bad faith claim because Plaintiff did "not allege enough facts to establish that [Defendant] (1) breached the duty of good faith, (2) knew their coverage denial lacked legitimate basis, or (3) acted with the required culpable mental state for bad faith," and because the allegations supporting those elements were conclusory. [Dkt. 42 at 9.] In particular, the Court explained that Defendant's coverage denial, even if in error, "came from its rational determination that the DynaDome could have been repaired rather than replaced and that [Plaintiff] breached its contract by beginning demolition against [Defendant]'s advice." *Id.* The Court further noted that there were "no factual allegations illustrating that [Defendant] plausibly acted with any malice or dishonest purpose in this dispute." *Id.*

Plaintiff asserts that their proposed Amended Complaint addresses these deficiencies by "identif[ying] the specific engineering opinions available to [Defendant], the timing of

[Defendant]'s inspections, the contents of [Defendant]'s communications, the factual basis for Plaintiff's allegation that [Defendant] knowingly advanced unsupported repair theories, and the facts supporting Plaintiff's allegation that [Defendant] states prejudice rationale was materially incomplete or misleading." [Dkt. 43, ¶ 15.] Plaintiff argues that these new factual allegations support a plausible bad faith coverage denial claim because they show that Defendant "knew material facts contrary to or qualifying the factual propositions it affirmatively relied upon to limit payment and nevertheless communicated those propositions as established facts." [Dkt. 47 at 5.] Plaintiff contends that "if proven, those facts permit an inference of conscious wrongdoing rather than mere negligence or a good-faith difference of opinion." *Id.*

The Court does not find Plaintiff's argument persuasive. The Court notes that Plaintiff re-pleads its bad faith claim in following three paragraphs:

> 58. [Defendant] breached that duty through the specific conduct alleged above, including knowingly mischaracterizing the engineering support in the claim file, asserting that a safe certifiable two-week repair was available without a competent factual basis, omitting its repeated inspection opportunities and advance notice when asserting prejudice, and using those misstatements and omissions to limit payment and shift the consequences of [Defendant]'s unresolved repair theory to [Plaintiff].
>
> 59. [Defendant] knew that its denial rationale omitted or contradicted material information in its possession. In particular, [Defendant] knew before the partial denial that the Engineer of Record had identified permanent structural deformation and recommended replacement; knew no contractor or engineer had committed to perform and certify [Defendant]'s proposed repair; knew [Defendant] had repeatedly inspected the assembled structure; and knew [Defendant] had advance notice of the dismantling but did not attend.
>
> 60. [Defendant]'s conduct was undertaken with the culpable state of mind required under Indiana law. The deliberate presentation of assumptions as established facts, the characterization of a supported engineering position as unsupported, and the use of a knowingly incomplete prejudice narrative support a reasonable inference of conscious wrongdoing, dishonest purpose, and furtive design, rather than negligence, mistake, or a good-faith difference of opinion.

[Dkt. 43-1, ¶¶ 58–60.]

First, to the extent Plaintiff alleges bad faith in Defendant's manner of handling the claim—*see* [Dkt. 43-1, ¶ 1 ("This action arises from [Defendant]'s handling . . . of [Plaintiff's commercial property insurance claim . . . .")]—"neither the Indiana Supreme Court nor the Indiana Court of Appeals has recognized a claim for bad faith claims handling." *Telamon Corp. v. Charter Oak Fire Ins. Co.*, 179 F.Supp.3d 851, 856 (S.D. Ind. 2016); *see Brandell v. Secura Ins.*, 173 N.E.3d 279, 288 (Ind. Ct. App. 2021) (acknowledging that the Indiana Supreme Court has not recognized a claim for bad faith claim handling).

Second, "[i]n this context, bad faith means knowledge by [Defendant] that it had no legitimate reason for denying [Plaintiff's] claim, but nevertheless refused it[.]" *Hoosier Ins. Co., Inc. v. Mangino*, 419 N.E.2d 978, 983 (Ind. Ct. App. 1981). The Court previously determined that Defendant, through the exhibits attached to their Answer, established two legitimate reasons for partially denying Plaintiff's claim: (1) Defendant's determination, based on their expert's report, that the DynaDome could have been repaired rather than replaced and (2) Plaintiff's breach of policy conditions. [Dkt. 42 at 9.] Plaintiff's allegations that Defendant had no factual basis for its two-week repair estimate and knew that no contractor or engineer had committed to perform and certify the proposed repair may cast doubt on the legitimacy of Defendant's determination that DynaDome could have been repaired rather than replaced. But Plaintiff's new factual allegations do not cast doubt on Defendant's denial based on Plaintiff's alleged breach of policy conditions.

Defendant's August 6th letter identifies a single reason for partially denying Plaintiff's claim: Plaintiff's "breach of duty under the policy has prejudiced [Defendant]." [Dkt. 19-8 at 9.] Plaintiff's alleged breach of duty was "destroy[ing] and dispos[ing] of the purportedly damaged components of the property without providing [Defendant] an opportunity to propose a protocol

for the dismantling of the components or to inspect each component during and after its dismantling." *Id.* Plaintiff's insurance policy—which was attached to Defendant's Answer—states that Plaintiff has a duty to "if feasible, set the damaged property aside and in the best possible order for examination" and to "permit [Defendant] to take samples of damaged and undamaged property for inspection, testing, and analysis[.]" [Dkt. 19-1, at 43.] And Defendant reminded Plaintiff of these duties multiple times before and after the dismantling. *See* [Dkts. 19-4 at 2–4 (June 6 email); 19-6 (July 1 letter).] Despite the policy language and Defendant's reminders, Plaintiff did not preserve the dismantled parts. [Dkt. 43-1, ¶ 42.] Therefore, the pleadings and their attachments show that Defendant had a legitimate reason for partially denying Plaintiff's claim. Accordingly, it would be futile to grant Plaintiff leave to reinstate their bad faith claim.

## IV. Conclusion

For the reasons explained above, Plaintiff's Motion for Leave to File their First Amended Complaint, [Dkt. 43], is **DENIED**.

SO ORDERED.

Dated: 14 SEP 2026

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email